**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

SQIP, LLC,                                           Case No. 24-cv-1111 (LMP/DJF)

              Plaintiff,

v.

Cambria Company LLC,

              Defendant.

**DEFENDANT CAMBRIA COMPANY LLC'S MEMORANDUM**
**OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION**
**TO COMPEL FINANCIAL DOCUMENTS**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   LEGAL STANDARDS ......................................................................... 3

    A.    Rule 26 standard for discoverable information ............................. 3

    B.    Reasonable royalty damages for patent infringement .................... 3

III.  ARGUMENT ....................................................................................... 5

    A.    The Court should deny SQIP's request for financial discovery on *non-accused* products, which is facially irrelevant and overbroad. ...................... 5

    B.    The Court should deny SQIP's requests for transaction-level data. ............ 8

        1.    Cambria has already produced financial information that is responsive to SQIP's actual discovery requests................................. 9

        2.    The additional details requested in SQIP's motion are irrelevant, overbroad, cumulative, and not proportional. ................................... 12

        3.    Attempting to collect the transaction-level details that SQIP's motion demands would impose an extreme undue burden. ............. 15

    C.    The Court should deny SQIP's request for the Cosentino settlement agreement, which has nothing to do with the issues in this case. ............... 16

IV.   CONCLUSION ................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bally Techs., Inc. v. Bus. Intel. Sys. Sols., Inc.*,
 No. 2:10-CV-00440-PMP, 2011 WL 3892221 (D. Nev. Aug. 30, 2011) ................. 17

*Bavely, Tr. of AAA Sports, Inc. v. Panini Am., Inc.*,
 No. 4:22-CV-093, 2023 WL 2558145 (E.D. Tex. Jan. 9, 2023) ................................ 13

*C & C Jewelry Mfg., Inc. v. West*,
 No. C09-01303-JF-HRL, 2011 WL 2559638 (N.D. Cal. June 28, 2011) ................ 1, 6

*Cambria Co. LLC v. Hirsch Glass Corp., d/b/a Spectrum Quartz*,
 No. 21-10092-MAS-JBD, 2023 WL 4267598
 (D.N.J. June 29, 2023) ............................................................................ 2, 18, 19, 20

*Deckers Outdoor Corp. v. Sears Holdings Corp.*,
 No. 2:14-CV-02561-ODW, 2014 WL 7185355
 (C.D. Cal. Dec. 15, 2014) ........................................................................................ 5

*Enplas Display Device Corp. v. Seoul Semiconductor Co.*,
 909 F.3d 398 (Fed. Cir. 2018) .......................................................................... 1, 4, 5

*Ericsson, Inc. v. D-Link Sys., Inc.*,
 773 F.3d 1201 (Fed. Cir. 2014) ............................................................................... 4

*Funai Elec. Co. v. Orion Elec. Co.*,
 No. 01CIV.3501(AGS)(JCF), 2002 WL 1808419
 (S.D.N.Y. Aug. 7, 2002) ........................................................................................ 17

*Generac Power Sys., Inc. v. Kohler Co.*,
 No. 11-CV-1120-JPS, 2012 WL 2049945 (E.D. Wis. June 6, 2012)................. 6, 8, 15

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
 318 F. Supp. 1116 (S.D.N.Y. 1970)................................................................. *passim*

*Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*,
 No. 1:10-CV-00148 LJO, 2011 WL 2518948 (E.D. Cal. June 23, 2011) .................. 10

*Hofer v. Mack Trucks, Inc.*,
 981 F.2d 377 (8th Cir. 1992) .................................................................................. 3

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
 No. 12-CV-03844-JST(MEJ), 2014 WL 4593338
 (N.D. Cal. Sep. 15, 2014)..................................................................................... 5, 7

**TABLE OF AUTHORITIES—continued**

**Page(s)**

*Largan Precision Co. v. Samsung Elecs. Co.*,
No. 13-CV-2740-DMS(NLS), 2014 WL 12199980
(S.D. Cal. Dec. 11, 2014) ................................................................. 6, 7, 12

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ................................................................. 17

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ............................................................... 4

*Misc. Dkt. Matter No. 1 v. Misc. Dkt. Matter No. 2*,
197 F.3d 922 (8th Cir. 1999) ................................................................. 3

*Perfect Co. v. Adaptics Ltd.*,
No. 3:14-CV-05976-RBL, 2018 WL 7982421
(W.D. Wash. Nov. 26, 2018) ............................................................... 6, 16

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
904 F.3d 965 (Fed. Cir. 2018) ............................................................... 4

*ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010) ............................................................ 4, 17

*Sprint Commc'ns Co. v. Comcast Cable Commc'ns, LLC*,
No. 11-2684-JWL, 2014 WL 11516244 (D. Kan. Nov. 14, 2014) ............................ 17

*Vallejo v. Amgen, Inc.*,
903 F.3d 733 (8th Cir. 2018) ................................................................. 3

*Woodway USA, Inc. v. LifeCORE Fitness, Inc.*,
No. 22-CV-492-JO (BLM), 2024 WL 890547 (S.D. Cal. Feb. 29, 2024) ........... 7, 8, 15

**Statutes**

35 U.S.C. § 284 ................................................................................. 1, 3, 4

**Other Authorities**

Fed. R. Civ. P. 26 ................................................................................. 3

Fed. R. Civ. P. 26(b)(1) ........................................................................ 3

Fed. R. Civ. P. 26(b)(2)(C)(i) ................................................................. 3

iii

## I.  INTRODUCTION

The Court should deny Plaintiff SQIP, LLC's ("SQIP") scattershot motion to compel myriad, wide-ranging financial information from Defendant Cambria Company LLC ("Cambria").  SQIP fails to establish the relevance or proportionality of its vague and numerous requests, which are immensely overbroad, unnecessary, and burdensome.

***First***, SQIP's request for financial data on "non-accused product sales" (Mot. 1) is plainly irrelevant and disproportional to the needs of the case.  This is a patent case in which SQIP is accusing specific products of infringing specific patent claims.  SQIP contends that its request is relevant to reasonable royalty damages (Mot. 1), but it is black-letter law that patentees cannot obtain damages on noninfringing products: "The royalty base for reasonable royalty damages *cannot include activities that do not constitute patent infringement*, as patent damages are limited to those 'adequate to compensate for the infringement.'"  *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 411 (Fed. Cir. 2018) (emphasis added) (citing, *e.g.*, 35 U.S.C. § 284).  Unsurprisingly, courts routinely deny requests for financials on non-accused products, and SQIP does not cite a single case holding otherwise.  *Infra* 5–6; *see also, e.g.*, *C & C Jewelry Mfg., Inc. v. West*, No. C09-01303-JF-HRL, 2011 WL 2559638, at *1 (N.D. Cal. June 28, 2011) (denying motion to compel financial information for "products that have not been accused of infringement": "As a logical matter, this court is unconvinced that sales of [] non-accused products … have any relevance to the accused [products].").

***Second***, SQIP's requests for exceedingly detailed "transaction-level (*i.e.*, invoice level) sales and cost records" (Mot. 6) are enormously overbroad and burdensome.  SQIP

1

fails to identify any discovery request that even seeks such details, and SQIP ignores that the extensive financials Cambria produced already include all revenues and costs for the accused products over the last decade, broken down by month and square foot for each individual product. *Infra* 8–16. SQIP provides no basis to break these details down even further to individual sales, especially as none of the details SQIP requests ("customer," "finish," "thickness," "geographic location," etc.) have anything to do with the asserted patent claims. Producing such granular, invoice-level detail would require collecting a vast amount of raw data from disparate sources and impose an extreme undue burden. SQIP fails to show any need, relevance, or proportionality for such a colossal undertaking.

**Third**, there is no basis to produce Cambria's confidential settlement agreement with an unrelated third party, Cosentino, on unrelated patents in an unrelated litigation over unrelated products. SQIP fails to disclose that its attorneys and operating affiliate lost the same motion to compel in a related, earlier-filed litigation, and SQIP offers no basis to reach a different result. *Infra* 16–20; *Cambria Co. LLC v. Hirsch Glass Corp., d/b/a Spectrum Quartz*, No. 21-10092-MAS-JBD, 2023 WL 4267598, at *4 (D.N.J. June 29, 2023) (denying motion to compel the Cosentino agreement and finding that it "achieved a global resolution of competing cases, proceedings, and claims in multiple jurisdictions, which together undermine the ability to derive a reasonable royalty comparator").

Because SQIP provides no legitimate basis to compel additional financial or licensing documents from Cambria, SQIP's motion to compel should be denied.

## II.    LEGAL STANDARDS

### A.    Rule 26 standard for discoverable information

Parties may obtain discovery only on matters "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts consider "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. Courts "must limit the frequency or extent of discovery otherwise allowed" where, among other reasons, "the discovery sought is unreasonably cumulative or duplicative." *Id*. at (b)(2)(C)(i).

"Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). "The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018). Thus, "even if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." *Misc. Dkt. Matter No. 1 v. Misc. Dkt. Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (quotation omitted).

### B.    Reasonable royalty damages for patent infringement

The Patent Act authorizes "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention." 35 U.S.C. § 284. The most common approach to calculating a reasonable royalty is "the hypothetical

negotiation or the 'willing licensor-willing licensee' approach, [which] attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). "A patentee is only entitled to a reasonable royalty attributable to [a product's] infringing features," which "generally requires a determination of the royalty base to which the royalty rate will be applied." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018). "[T]he royalty base should not be larger than the smallest salable unit embodying the patented invention," *id.*, and "the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more," *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).

"The royalty base for reasonable royalty damages cannot include activities that do not constitute patent infringement," and it is "improper to award [] reasonable royalty damages for the defendant's sale of … non-infringing products, because acts that do not constitute patent infringement cannot provide a proper basis for recovery of damages under [35 U.S.C. §] 284." *Enplas*, 909 F.3d at 411–12 (quotation omitted).

As evidence of the royalties that a willing licensee would pay, parties sometimes rely on existing licenses to the patented technology, but courts generally "consider[] only past and present licenses to the actual patent and the actual claims in litigation," and the Federal Circuit "has long required district courts performing reasonable royalty calculations to exercise vigilance when considering past licenses to technologies *other* than the patent in suit." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).

## III.    ARGUMENT

Citing four requests for production (Nos. 3, 12, 20, and 72), SQIP moves to compel a laundry list of items that fall into three categories (*see* Mot. 12):

1)  financials for non-accused products (item *a*), based on Request No. 72;

2)  transaction-level sales records and profit-and-loss data (items *b–k*), purportedly responsive to Request Nos. 3 and 20; and

3)  a settlement agreement with a third party, Cosentino (item *l*), purportedly responsive to Request Nos 12 and 72.

None of SQIP's demands have merit.

### A.    The Court should deny SQIP's request for financial discovery on *non-accused* products, which is facially irrelevant and overbroad.

There is no legal or factual basis to compel financial information on Cambria's non-accused products, which by definition are not even accused of infringement.  The only alleged purpose of SQIP's request is to calculate reasonable royalty damages (Mot. 1–2, 6–7), but it is axiomatic that SQIP *cannot* recover damages for non-infringing products, as "reasonable royalty damages cannot include activities that do not constitute patent infringement."  *Enplas*, 909 F.3d at 411 (quotation omitted).

Courts thus routinely deny motions to compel financials on non-accused products. *See Deckers Outdoor Corp. v. Sears Holdings Corp.*, No. 2:14-CV-02561-ODW, 2014 WL 7185355, at *1 (C.D. Cal. Dec. 15, 2014) (non-accused sales have "no bearing on reasonabl[e] royalties for the accused products and the requests are overly broad and unduly burdensome": "To the extent the Motion to Compel seeks an order compelling further production of all [defendant's] products (not just the accused products), the Motion is DENIED."); *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, No. 12-CV-

03844-JST(MEJ), 2014 WL 4593338, at *4 (N.D. Cal. Sept. 15, 2014) (plaintiff "has not articulated a damages theory that would entitle it to broad discovery of sales and revenue data as to unaccused [products]"); *C & C Jewelry*, 2011 WL 2559638, at *1 (denying motion to compel for "products that have not been accused of infringement": "As a logical matter, th[e] court is unconvinced that sales of [defendant]'s non-accused products … have any relevance to the accused [products]."); *Largan Precision Co. v. Samsung Elecs. Co.*, No. 13-CV-2740-DMS(NLS), 2014 WL 12199980, at *5 (S.D. Cal. Dec. 11, 2014) (plaintiff is "not entitled to financial documents and discovery as to Samsung's electronic devices as a whole," where "the only allegedly infringing components in the products are the imaging lenses"); *Generac Power Sys., Inc. v. Kohler Co.*, No. 11-CV-1120-JPS, 2012 WL 2049945, at *3 (E.D. Wis. June 6, 2012) (where patentee "has alleged that only one of [defendant]'s products infringes …., the Court finds no reasonable purpose for gathering information on the full stable of [defendant's products]"); *Perfect Co. v. Adaptics Ltd.*, No. 3:14-CV-05976-RBL, 2018 WL 7982421, at *2 (W.D. Wash. Nov. 26, 2018) (defendant "should not need to produce its entire accounting database, including confidential and irrelevant information such as 'revenues from non-accused products….'").

SQIP does not cite a single case that allowed financial discovery on non-accused products. SQIP cites only the general 15-factor framework for assessing royalty rates in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), without explanation or analysis. Mot. 6–7. SQIP's purported expert declaration is equally conclusory. *See* Schulte Decl. ¶¶ 3–4. Courts have rejected analogous arguments by patentees seeking to compel financials on non-accused products. *See Largan*, 2014 WL

12199980, at *5 ("Merely asserting that 'a party's finances are expressly relevant to damages under the *Georgia-Pacific* analysis' is as vague and insufficient a statement as the Court can imagine."); *Icon-IP*, 2014 WL 4593338, at *4 (rejecting general reliance on *Georgia-Pacific* factors to seek non-accused product sales).

SQIP's argument that this discovery "would allow SQIP's damages expert to draw comparisons between accused product and non-accused product sales" (Mot. 5) is equally unfounded.   SQIP does not explain how such "comparisons" could be relevant or proportional to the needs of the case.   Again, courts have rejected nearly identical arguments. *See Woodway USA, Inc. v. LifeCORE Fitness, Inc.*, No. 22-CV-492-JO (BLM), 2024 WL 890547, at *5 (S.D. Cal. Feb. 29, 2024) (rejecting argument that financials on unpatented products "could help illuminate the circumstances of a hypothetical negotiation and evaluate the profitability and commercial success of the patented products as compared to the unpatented products" as "speculative" and neither relevant nor proportional).

Regardless, Cambria has already provided significant company-wide financial data. In addition to product-specific data that Cambria provided for all accused products (Ex. A; *infra* 9–10), SQIP admits that Cambria produced annual profit-and-loss information detailing its total revenues, cost of goods sold, gross margin, manufacturing expenses, corporate expenses, and net income.   Mot. 3; Ex. B; Shindelar Decl. ¶ 4.   Cambria has also produced detailed revenue, cost, and profitability data for each of its manufacturing lines, including lines that make the accused products and lines that do not.   Ex. D; Shindelar Decl. ¶ 6.   SQIP fails to show that this extensive information is insufficient.

Apart from being irrelevant, overbroad, and cumulative, financial discovery on all non-accused products would be extremely burdensome. SQIP's attorney argument that "these documents should not be difficult to compile and produce" (Mot. 8) ignores that Cambria has released more than 150 different products. Shindelar Decl. ¶ 9. SQIP has only accused approximately 60 of those products, so its request for non-accused financial data would more than double the product-level data Cambria has provided, which would require a significant investment in time and effort. *Id.*

The sensitivity and confidentiality of Cambria's financials also warrant limiting their disclosure to only specific information necessary to litigate this case. SQIP "is seeking significant and sensitive financial information for a lengthy period of time from a direct competitor regarding products that are unrelated to the patents at issue in this dispute," which weighs strongly against granting its motion. *Woodway*, 2024 WL 890547, at *5; *see also Generac Power*, 2012 WL 2049945, at *3 ("[F]inancial documents provide distinct insight into the business of their owner. The Court is uncomfortable demanding the disclosure of such sensitive products to Kohler's direct competitor, when it simultaneously cannot identify a strong reason for their disclosure."). The Court should thus deny SQIP's request to compel financials on non-accused products.

**B.    The Court should deny SQIP's requests for transaction-level data.**

As for the accused products, SQIP's motion raises 10 different demands for additional financial information based on two production requests, Nos. 3 and 20. *See* Mot. 4–6, 12 (items *b*–*k*). For multiple reasons, SQIP's demands lack merit.

8

### 1.    Cambria has already produced financial information that is responsive to SQIP's actual discovery requests.

First, as shown below, Cambria has already produced the information that SQIP requested in its production requests Nos. 3 and 20.  Any additional information that SQIP demands in its motion to compel was never requested in the first place.

**<u>Request No. 3</u>**, which SQIP served on May 24, 2024, seeks:

> All documents sufficient to identify the U.S. monthly, quarterly, and yearly sales, revenues, income, and profit realized from products made by the Accused Processes, including without limitation, documents sufficient to identify, for each such product, the number of units sold and/or otherwise distributed, the sale price, licensing terms, gross revenues, cost of goods sold or licensed, costs associated with the research and development of the Accused Processes, gross profit margins, and net profit margins.

Ex. 1, No. 3.  Cambria's response, served June 24, 2024, agreed to provide:

> [S]ufficient financial data to identify the U.S. sales, revenues / income, and profits realized from the Accused Products, including, to the extent available, the number of units sold and/or otherwise distributed, gross revenues, cost of goods sold, costs associated with the research and development of the Accused Processes, gross profit margins, and net profit margins….

Ex. 2, No. 3.

In the year-and-a-half since Cambria served this response, SQIP has never raised any deficiency in Cambria's objections or response, and Cambria duly provided the "sufficient" data that SQIP requested and that Cambria agreed to produce.  Specifically, Cambria has produced voluminous spreadsheets detailing its (i) revenues, (ii) cost of goods sold, (iii) corporate expenses, (iv) operating profit margins, and (vi) square feet sold (which is how Cambria tracks unit sales), broken down by each individual accused product on a

monthly basis going back to 2015.  *See, e.g.*, Ex. A[1]; Shindelar Decl. ¶ 3.  Cambria has also produced its research-and-development budget ▮▮▮▮▮ reflecting the costs of developing the accused processes.  Ex. E.  Cambria has also disclosed that it does not license the accused products.  Ex. F at 11.

SQIP provides no basis to seek additional information.  SQIP's motion demands a specific identification for each individual sale of the "customer," "customer tier," "product thickness," "invoice-level net revenues and corresponding sales volumes," "slab finish," "discounts," "respective production line and production per lines," "specific geographic location of sale," and "subcomponents or consumables of cost of good … sold," which SQIP's motion defines as "including, but not limited to, per line cost COGS such as cost of mold(s), film, labor; and/or, per product cost of quartz, resin, colorant and/or pigment." Mot. 12 & 1 n.1; *see also* Mot. 5.  For each of these minute details, SQIP's motion demands "transaction-level (*i.e.*, invoice level) sales and cost records."  Mot. 6–7.  Yet SQIP's Request No. 3 does not request *any* of these details, let alone transaction/invoice-level records.  For this reason alone, SQIP lacks any basis to compel additional information.  *See Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*, No. 1:10-CV-00148 LJO, 2011 WL 2518948, at *3 (E.D. Cal. June 23, 2011) (denying motion to compel invoices where

---

[1] Given the size of these spreadsheets, the text in the PDF exhibits is very small.  Cambria can provide the native Excel versions (which is how the documents were produced to SQIP) upon request if it would be helpful for the Court's review.

document requests sought only "documents sufficient to show" certain expenditures—a party "cannot expand the scope of its requests on a motion to compel").[2]

**<u>Request No. 20</u>**, also served in May 2024, seeks: "All price lists, profit or loss statements, and market studies relating the sale of the Accused Products." Ex. 1, No. 20. Cambria's response, served in June 2024, agreed to produce "representative price lists, profit and loss statements, and market studies relating to the sale of the Accused Products." Ex. 2, No. 20. Again, SQIP has never raised any issue with Cambria's objections or responses in the year-and-a-half since Cambria served them.

As with Request No. 3, SQIP does not identify any documents missing from Cambria's production that SQIP actually sought in Request No. 20. SQIP's motion seeks "[p]rofit and loss statements for [Cambria's] entire quartz product business" (Mot. 12, item *k*), but Cambria has already provided exactly that (Ex. B). Although SQIP moves to compel "[s]ales data based on actual selling prices" (Mot. 12), Request No. 20 seeks only "price lists," which Cambria has also provided on an annual basis going back to 2015 (Ex. C). Shindelar Decl. ¶¶ 5–6. Moreover, as discussed above, the product-specific financials Cambria has produced already reflect actual sales prices (including discounts) by providing the actual revenues Cambria received for each accused product in each month. *See* Ex. A;

---

[2] SQIP also complains that Cambria's Ella product is not listed in the product-specific financials (Mot. 8–9), but that is because SQIP has not accused Ella of infringement. *See* Ex. G (infringement contentions) at 2–3, 16–20. SQIP can only amend its infringement contentions with leave of Court for good cause (Dkt. 44 at 4), and SQIP does not seek to amend its contentions to accuse any additional products (Dkt. 145 at 1).

Shindelar Decl. ¶ 3.  Additionally, the pricing series for each accused (and non-accused) product is publicly available on Cambria's website.  Shindelar Decl. ¶ 5.

Because SQIP does not identify any financial information missing from Cambria's productions that SQIP requested in Request Nos. 3 and 20, SQIP's motion to compel additional information for these requests should be denied.

### 2.    The additional details requested in SQIP's motion are irrelevant, overbroad, cumulative, and not proportional.

Second, even if the transaction-level details that SQIP seeks to compel were properly requested (they were not), SQIP does not explain why such details are relevant, necessary, or proportional to the case.  SQIP merely makes the conclusory statement that "[s]uch information is helpful to SQIP and its damages expert to asses [*sic*] a reasonable royalty under one or more of the *Georgia-Pacific* factors" (Mot. 7–8), which is far too "vague and insufficient" to compel any additional production.  *See Largan*, 2014 WL 12199980, at *5.  While SQIP submits a declaration from a purported expert, he only repeats the same boilerplate conclusion that each of SQIP's demands is "available and relevant," without evidence or analysis.  Schulte Decl. at 3–10.

SQIP never explains, for example, how the "thickness" or "finish" of individual slab sales (Mot. 5–6, 12) has anything to do with the patents-in-suit.  The asserted patents relate to methods of filling a mold or creating cracked veins, and none of SQIP's infringement allegations depend on the "thickness" or "finish" of any product.  *See* Dkt. 51 ¶¶ 31–35, 46–52; Ex. G (infringement contentions).  Nor does SQIP explain how transaction-level details for each "customer," "customer tier," "production line," or "geographic location"

could affect any damages calculation. *See* Mot. 12. SQIP's response to Cambria's contention interrogatory on damages fails to preserve any damages theory that could possibly depend on such variables (Ex. H at 43–46, No. 9), and SQIP's purported expert articulates no such theory either. SQIP's effort to compel such irrelevant details is nothing more than a fishing expedition.

As to "prices," "discounts," and "subcomponents or consumables of cost of good[s] [sold]" (Mot. 12), Cambria's productions already reflect all actual revenues and costs, as discussed above. Shindelar Decl. ¶ 3. SQIP never articulates why transaction-level details or additionally broken-down costs are relevant, necessary, or proportional—and they are not. SQIP cites no basis to question the veracity of Cambria's produced financial information, which Cambria's financial personnel retrieved and compiled from financial databases operated in the ordinary course of business. *Id.* ¶ 2. There is thus no basis to require underlying invoice data or documentation. *See, e.g.*, *Bavely, Tr. of AAA Sports, Inc. v. Panini Am., Inc.*, No. 4:22-CV-093, 2023 WL 2558145, at *7 (E.D. Tex. Jan. 9, 2023) (denying motion to compel—"courts only order parties to produce invoice-level data when the veracity of the summary data is genuinely in question").

SQIP's argument that Cambria's financial documents are "internally irreconcilable" (Mot. 6 & n.4) is misleading because it erroneously attempts to compare two unrelated disclosures. ██████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████. *See* Ex. 5 at 111:2–112:12. But SQIP does not explain why it needs these different data sets to "reconcile" or what significance this has

to any damages calculation.  SQIP only argues that its "damages expert cannot make an assessment between the customer pricing tiers/customer pricing and sales made" (Mot. 6), which again ignores that the product-specific data Cambria has produced already reflects all actual pricing, charges, and discounts by reporting actual revenues.  Shindelar Decl. ¶ 3.

SQIP complains that Cambria's financial productions were "prepared for this litigation" (Mot. 2), but that is the only way to collect and produce such financial information, which must be exported from database systems.  Shindelar Decl. ¶ 2.  SQIP omits that its *own* produced financials were also prepared specifically for this litigation, as confirmed by SQIP's financial witness.  Ex. I at 64:20–65:2, 88:14–89:3.

Tellingly, SQIP has not produced any of the transaction-level details that it requests from Cambria, despite SQIP's allegations that it licenses and produces patent-practicing products through its subsidiary, Elite Quartz, and markets such products through its commonly owned affiliate, Hirsch Glass.  *See* Dkt. 51 ¶¶ 13–15.[3]  SQIP's entire financial production is limited to ██████████████████████████████████████████ ██████████████████████████████████████████████████████.  Ex. I at 88:19– 21, 64:20–24; 72:18–22, 75:14–16, 76:22–23; Ex. J; Ex. K.  Cambria has produced far more financial information than SQIP, and any additionally granular detail on individual transactions would be unreasonably cumulative, overbroad, and disproportionate.

---

[3] In lieu of requiring subpoenas, SQIP agreed to collect and produce documents from Elite Quartz and Hirsch Glass, among other commonly owned affiliates.  Ex. R at 2.

**3.    Attempting to collect the transaction-level details that SQIP's motion demands would impose an extreme undue burden.**

Third, SQIP's requests for minute details of Cambria's sales over the past decade seek an enormous volume of data that would be extremely burdensome and practically impossible to collect. ██████████████████████████████████████████████

██████████████████████████████████████████████—a vast amount of monthly data that SQIP is seeking for a 10-year period. Shindelar Decl. ¶ 10. ████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████. *Id*. ██████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████. *Id*. Moreover, ██████████████████████

██████████████████████████████████████████████████

████████████████████████ *Id*. ¶ 11. ██████████████████████

██████████████████████████████████████████████████

████████████████████████ *Id*.

Apart from the sheer time and effort required, SQIP's requests also impose an undue burden by unnecessarily exposing highly sensitive details about Cambria's financials and customer relationships, which again weighs heavily against their production. *See Woodway*, 2024 WL 890547, at *5 (denying motion to compel "significant and sensitive financial information for a lengthy period of time from a direct competitor"); *Generac*

*Power*, 2012 WL 2049945, at *3 (denying motion to compel "financial documents [that] provide distinct insight into the business of their owner" to a "direct competitor"); *Perfect Co.*, 2018 WL 7982421, at *2 (denying motion to compel: defendant "should not need to produce its entire accounting database, including confidential" financials).

Especially given the nonexistent or minimal probative value of SQIP's demands (which were not even specifically requested in discovery), these burdens confirm that SQIP's demands are not proportional to the needs of the case and should be denied.

### C. The Court should deny SQIP's request for the Cosentino settlement agreement, which has nothing to do with the issues in this case.

Finally, SQIP lacks any basis to compel Cambria's confidential settlement agreement with Cosentino—an unrelated third party—to resolve unrelated litigation over unrelated patents and unrelated products. SQIP cites five cases filed against Cosentino (Mot. 12) but fails to disclose that none involved *any* of the products or processes accused in this case. Instead, the Cosentino cases involved a completely unrelated product line: Cambria's Coastal Collection, which SQIP does *not* accuse of infringement. Indeed, there is zero overlap between the accused products in this case and the patent-practicing products in the Cosentino cases. *Compare* Ex. G at 2–3, 16–20 *with* Exs. L–O ¶ 30, Ex. P ¶ 32.

SQIP's assertion that the Cosentino settlement is relevant to "SQIP's damages case and in support of SQIP's expert determining a reasonable royalty" (Mot. 11) is unsupported and contradicted by SQIP's own cited caselaw, which holds that the relevant *Georgia-Pacific* factor for considering prior licenses generally "considers only past and present licenses *to the actual patent and the actual claims in litigation*," and explicitly warns

16

*against* "considering past licenses to technologies *other* than the patent in suit." *ResQNet.com*, 594 F.3d at 869 (first emphasis added); *see also id*. at 872 (relying only on "evidence of licenses on *the claimed* technology") (emphasis added).

Cambria's lawsuits against Cosentino obviously did not involve the patents that SQIP asserts here, which is reason enough to deny SQIP's motion. *See Sprint Commc'ns Co. v. Comcast Cable Commc'ns, LLC*, No. 11-2684-JWL, 2014 WL 11516244, at \*3 (D. Kan. Nov. 14, 2014) (denying motion to compel "agreements involving technology unrelated to the patents-in-suit") (quotation omitted); *Bally Techs., Inc. v. Bus. Intel. Sys. Sols., Inc.*, No. 2:10-CV-00440-PMP, 2011 WL 3892221, at \*3 (D. Nev. Aug. 30, 2011) (denying motion to compel where movant "has not shown [] that license agreements involving other patents are sufficiently relevant to be discoverable"); *Funai Elec. Co. v. Orion Elec. Co.*, No. 01CIV.3501(AGS)(JCF), 2002 WL 1808419, at \*15–16 (S.D.N.Y. Aug. 7, 2002) (denying motion to compel and agreeing that the "request is overbroad insofar as it seeks licenses unrelated to the Patents-in-Suit").

The only similarity that SQIP alleges between the asserted patents here and those in the Cosentino cases is that they generally "relat[e] to the manufacture of quartz products." Mot. 11. Yet precedent is clear that "alleging a loose or vague comparability between different technologies or licenses does not suffice" to make a license relevant, and a patentee cannot rely on a license from "the same general [technological] field without proving a relationship to the patented technology or the accused infringing products." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012). Neither SQIP nor its expert even attempt to meet their burden of showing any comparability.

SQIP fails to mention that it previously litigated and lost (through its operating affiliate, Hirsch Glass) this exact issue in the earlier-filed case in the District of New Jersey, which rejected the same argument by SQIP's attorneys that "the patents at issue in the Cosentino litigation and the patents-in-suit here both concern technology relevant to the design, creation, and manufacture of quartz products that emulate natural stone." *Hirsch Glass*, 2023 WL 4267598, at *3. That superficial resemblance did not prevent "the specific technology underlying the two sets of patents" from being "very different." *Id*. SQIP fails to distinguish *Hirsch Glass* and provides no reason to reach a different result.[4]

Ironically, in the Cosentino litigation itself, the court also denied a motion by Cosentino to compel Cambria to produce agreements on unrelated patents. *See* Ex. Q at 23:15–17 (ruling that if prior agreements are "from separate patent families …, they don't need to be produced"). Like SQIP here, Cosentino argued that Cambria's other settlement agreements involved patents "related to this technology" generally, but the court rejected that argument and found that the relevant question is whether the patents at issue in the agreements are "related to the[] patents" in the litigation. *See id*. at 22:9–15.

Apart from differences in the patents and underlying technologies, SQIP fails to explain how a settlement to resolve Cambria's litigations with Cosentino could be

---

[4] The patents in *Hirsch Glass* were Cambria patents that Cambria is also asserting as prior art in this case. These patents are unrelated to the Cambria patents asserted in the Cosentino case, which are from a separate patent family with a different filing date, different written description, and different figures. *Compare* Ex. S (patent family at issue in *Hirsch Glass* and in the present case as prior art) *with* Ex. T (patent family at issue in Cosentino cases). Hirsch Glass's own expert—who was hired by SQIP's attorneys and previously served as Cosentino's expert—testified that the technologies in these two separate Cambria patent families are "completely different." *Hirsch Glass*, 2023 WL 4267598, at *3.

economically comparable to a hypothetical negotiation for licensing the two asserted patents-in-suit. As SQIP acknowledges, the Cosentino settlement ███████████

████████████████████████    ███████████████████████████

██████████████████████████████████████████████. *See*

*Cosentino Res. & Dev. S.L.U. v. Cambria Co. LLC*, No. 20-1080 (W.D. Tex.); *Cosentino S.A.U. v. Cambria Co. LLC*, No. T-1422-20 (Can. F.C.); *Cosentino S.A.U. v. Cambria Co. LLC*, IPR2021-00214, -00215, -00216, PGR2021-00010, -00090 (P.T.A.B.). As the *Hirsch Glass* court found, the Cosentino "agreement's consideration achieved a global resolution of competing cases, proceedings, and claims in multiple jurisdictions," which makes it "not at all likely to lay the groundwork for the calculation of a reasonable royalty under the multi-factor *Georgia-Pacific* test." 2023 WL 4267598, at *4.

The highly confidential nature and sensitivity of the Cosentino agreement also weighs strongly against its production. SQIP's failure to make any showing of relevance confirms that it is merely fishing to gain a tactical advantage by prying into Cambria's settlement positions with another competitor. The Cosentino agreement is not only confidential to Cambria but is also the confidential information of Cosentino—a non-party that had no say in drafting the stipulated protective order and has not even been subpoenaed. In denying the same motion to compel brought by SQIP's attorneys, the *Hirsch Glass* court was "mindful of and sensitive to requiring disclosure of a confidential settlement agreement implicating the confidentiality interests of a non-party," which also weighed against compelling production of the Cosentino agreement. 2023 WL 4267598,

at *4.  SQIP cites no relevant changes since the *Hirsch Glass* decision, which was well-reasoned and correct.  This Court should follow the same approach.

## IV.    CONCLUSION

Cambria respectfully requests that the Court deny SQIP's motion to compel.


Dated: January 5, 2026                      Respectfully submitted,


                                            */s/ Eimeric Reig-Plessis*
                                            Eimeric Reig-Plessis (*pro hac vice*)
                                            WINSTON & STRAWN LLP
                                            101 California Street
                                            San Francisco, CA 94111
                                            Tel.: 415-591-6808
                                            ereigplessis@winston.com

                                            Eric H. Chadwick (#248769)
                                            DEWITT LLP
                                            901 Marquette Ave, Suite 2100
                                            Minneapolis, MN 55402
                                            Tel.: 612-305-1400
                                            ehc@dewittllp.com

                                            COUNSEL FOR DEFENDANT
                                            CAMBRIA COMPANY LLC